UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALFONZO QUINNEY,

                              Petitioner,

                                                    **DECISION AND ORDER**

        -vs-                                        **No. 07-CV-0627(VEB)**

JAMES T. CONWAY,

                              Respondent.
_____

## I.        Introduction

*Pro se* petitioner Alfonzo Quinney ("Quinney" or "Petitioner") seeks a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his detention in

Respondent's custody. Quinney is incarcerated pursuant to a judgment of conviction entered

against him following a jury trial on charges of attempted first degree assault and first degree

reckless endangerment.

## II.       Factual Background and Procedural History

### A.        The Trial, Sentencing, and Direct Appeal

Under Indictment No. 99-1934-001, Petitioner was charged with one count of attempted

assault in the first degree (New York Penal Law ("P.L.") §§ 110.00, 120.10(1)), four counts of

reckless endangerment in the first degree (P.L.§ 120.25), and one count of Criminal Possession

of a Weapon in the Second Degree (P.L. § 265.03(2)).

The charges stemmed from allegations that Quinney, while standing at a street corner,

shot a gun at a passing vehicle containing the driver of the vehicle and two passengers. An

embedded bullet was recovered from the internal door frame of the vehicle, and bullet holes were

found in a nearby residence. Several weeks later, the driver of the vehicle observed Quinney

standing on the same street corner and reported his observation to the police. The police drove to the scene and arrested defendant. At trial all three occupants of the vehicle identified Quinney as the shooter, and a nearby resident testified that, upon hearing the shots, she looked out her window and observed Quinney running from the scene. The defense challenged the identification testimony of the witnesses and introduced evidence that a third party was the shooter.

On the evening of August 15, 1999, Darren Abrams was driving around Buffalo in a dark blue Ford Expedition with his friends Jerome Winfield and Jeffrey Moore. T.33-34, 151, 204 (Numbers preceded by "T." refer to pages of the trial transcript). At about 8:00 p.m. the Expedition turned the corner from B Street onto Fillmore Avenue. T.35, 37. As it did so, Quinney, who was standing in front of a delicatessen at the corner of Fillmore and B, pulled a long gun from his sweat pants, *see* T.37, 95, 142, 179, and fired several shots at the Expedition, *see* T.38, 142, 166, 175. Apparently, two or three hours before the shooting, Abrams had had a minor shouting match with Quinney over a traffic incident. T.24-25, 27-32.

The occupants of the Expedition were not struck, but a bullet hit the inside of the pillar that separates the windshield from the front passenger window. T.181-183, 266, 295-296. Another bullet passed through the living room of a nearby house located at 962 Fillmore, leaving a clean round hole on the outside of the house indicating that it had not ricocheted before striking the house. T.267, 278, 344, 500, 512-513.

After it was hit, the Expedition crashed into another car that was parked in front of 964 Fillmore. T.38, 50, 142, 175, 249-250. Abrams, Winfield, and Moore jumped out of the Expedition and ran up the street to a gas station-convenience store, called the police, then hid in the freezer at the back of the store until police arrived. T.39, 40, 107, 147, 178-179.

Several weeks later, on September 4, 1999, Abrams saw defendant standing in front of the delicatessen at the corner of Fillmore Avenue and B Street and notified the police. T.45-46. The police then went to that location and arrested Quinney. T.305.

The jury returned a verdict convicting Quinney of the charges of first degree attempted assault (one count) and first degree reckless endangerment (four counts) in the First Degree. He was subsequently sentenced as a second violent felony offender to fourteen years in prison on the attempted assault conviction and three and one-half to seven years in prison for each reckless endangerment conviction, with all sentences to run concurrently with each other.

On direct appeal, the Appellate Division, Fourth Department unanimously affirmed the conviction. *People v. Quinney*, 305 A.D.2d 1044 (App. Div. 4th Dept. 2003). Quinney's motion for reargument was denied. *People v. Quinney,* 307 A.D.2d 783 (App. Div. 4th Dept. 2003). The New York Court of Appeals denied leave to appeal. *People v. Quinney*, 100 N.Y.2d 583 (N.Y. 2003).

**B.      Other Post-Conviction Proceedings in State Court**

Petitioner filed a post conviction motion to vacate the judgment on October 26, 2004, in which he claimed that: (1) the prosecution had violated its duty to disclose favorable evidence; (2) that his appeal was prejudiced by an allegedly inaccurate trial transcript; and (3) the jury was improperly charged.  Petitioner's motion was denied by a memorandum and order dated August 15, 2005. Petitioner filed a second post conviction motion to vacate the judgment on January, 16, 2006. Petitioner's motion was denied by a memorandum and order dated June 6, 2006.

In an application dated April 9, 2004, Petitioner sought a writ of error *coram nobis* from the Appellate Division. By summary order dated June 14, 2004, the Appellate Division denied

petitioner's motion.

### C. The Federal Habeas Petition

Petitioner presents seven grounds for relief: (1) the conviction was against the weight of the evidence; (2) that prosecutorial misconduct denied him of his right to a fair trial; (3) the trial court committed reversible error in allowing an assistant district attorney to testify at trial; (4) the prosecution violated its obligation to disclose favorable evidence; (5) the identification procedure was unduly suggestive and he was entitled to a hearing; (6) he was entitled to a hearing to evaluate whether he was arrested without probable cause; and (7) he received ineffective assistance of trial and appellate counsel.

The parties have consented to final disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1). For the reasons that follow, the petition is dismissed.

## III. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id.* § 2254(d)(2); *see also Williams v. Taylor*, 529 U.S. 362 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. *Williams*, 529 U.S. at 412.

**IV.     Analysis of the Claims Raised in the Petition**

**A.     Claim One: The verdict was against the weight of the credible evidence.**

Quinney's claim regarding the weight of the evidence, *see* Petitioner's Memorandum of Law at pp. 4-8 (Docket No. 2), specifically asks the Court to "weigh the facts and the competing inferences therefrom . . . ."  This is not a federal constitutional claim cognizable in a federal habeas proceeding. A "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). A "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute. *People v. Bleakley*, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (N.Y.1987) (weight of the evidence claim is based on court's factual review power; sufficiency of evidence claim based on the law); *accord, e.g.*, *People v. Romero*, 7 N.Y.3d 633, 642-43 (N.Y. 2006). On the other hand, a legal insufficiency claim is based on federal due process principles. *Id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

Because Quinney's weight of the evidence claim implicates only state law, it is not cognizable in this federal habeas proceeding. *See* 28 U.S.C. § 2254(a)  (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (habeas corpus review is not available where there is simply an alleged error of state law); *Ex parte Craig*, 282 F. 138, 148 (2d Cir.1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), *aff'd*, 263 U.S. 255 (1923).

Therefore, it is dismissed as not cognizable. *Accord, e.g., Garrett v. Perlman*, 438 F. Supp.2d 467, 470 (S.D.N.Y. 2006) (dismissing claim that conviction was against the weight of the evidence; such a claim is not a basis for habeas relief but presents only an error of state law, for which habeas review is not available); *Feliz v. Conway*, 378 F. Supp.2d 425, 430 n. 3 (S.D.N.Y.2005); *Douglas v. Portuondo*, 232 F. Supp.2d 106, 116 (S.D.N.Y. 2002); *Correa v. Duncan*, 172 F. Supp.2d 378, 381 (E.D.N.Y. 2001).

To the extent that Quinney, in his argument regarding the weight-of-the-evidence, references the constitutional due process standard regarding the quantum of evidence legally sufficient to support a conviction, there was more than ample evidence to satisfy *Jackson v. Virginia*. Quinney's claim is premised on the contention that because two of the witnesses' failed to identify him before the grand jury; he argues that this renders their trial testimony incredible as a matter of law. Quinney's legal-insufficiency argument consists of asking this Court to revisit the jury's determinations as to witness credibility, and conclude that certain testimony was unworthy of belief. Quinney's arguments regarding the credibility of his witnesses versus the prosecution's witnesses were properly made to the jury, which rejected them. It is not the province of a federal habeas court to revisit a fact-finder's credibility determinations. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; deferring to the jury's assessments of the particular weight to be accorded to the evidence and the credibility of witnesses). Because Quinney's only argument concerning the sufficiency of the evidence asks the Court to consider issues not reviewable in a habeas proceeding, and is, in any event, without merit, it is dismissed.

**B.      Claim Two: Prosecutorial misconduct deprived Petitioner of a fair trial.**

Quinney asserts five distinct instances of alleged prosecutorial misconduct. The Appellate

Division resolved the claims on the merits, *see Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d

Cir.2001), and therefore in order to obtain habeas relief, Petitioner must demonstrate that this

ruling amounted to an unreasonable application of clearly established Supreme Court precedent

regarding prosecutorial misconduct, *see id.*

Collateral challenges to prosecutorial misconduct must be reviewed under the narrow

standard of review for due process claims, not the "broad exercise of supervisory power."

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo,* 416 U.S.

637, 642 (1974)). The Supreme Court explained in *Darden* that when considering claims of

prosecutorial misconduct on habeas review, the issue is not whether the prosecutor's statements

to the jury were "'undesirable or even universally condemned' . . . . The relevant question is

whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting

conviction a denial of due process.'" 477 U.S. at 181 (quoting *Donnelly,* 416 U.S. at 642).

"Under the standard of *Donnelly,* the question before a federal appellate court is whether 'the

prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally

unfair." *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir.1990) (internal quotations and citations

omitted).

**1.      Improper cross-examination of a witness regarding failure to come
          forward with exculpatory evidence**

The Appellate Division rejected this claim, holding as follows:

Contrary to defendant's contention, the prosecutor did not engage in misconduct
by cross-examining defendant's brother with respect to his failure to come

> forward with exculpatory information before trial. Although "a citizen ordinarily
> has no legal obligation to volunteer exculpatory information to law enforcement
> authorities[,] . . . the failure to speak up at a time when it would be natural to do
> so might well cast doubt upon the veracity of the witness'[s] exculpatory
> statements at trial" (*People v. Dawson*, 50 N.Y.2d 311, 317-318, 428 N.Y.S.2d
> 914, 406 N.E.2d 771). In order to lay a foundation for such questioning, the
> prosecutor had to establish that the witness "was aware of the nature of the
> charges pending against the defendant, had reason to recognize that he possessed
> exculpatory information, had a reasonable motive for acting to exonerate the
> defendant and, finally, was familiar with the means to make such information
> available to law enforcement authorities" (*id.* at 321 n. 4, 428 N.Y.S.2d 914, 406
> N.E.2d 771). Here, the prosecutor laid the requisite foundation and thus properly
> questioned the witness concerning his failure to disclose the information both
> during a police interview and when defendant called him as a witness before the
> grand jury.

*People v. Quinney*, 305 A.D.2d at 1044-45 (alterations and ellipses in original). The Appellate

Division's ruling was not incorrect as a matter of Federal law.

"The Supreme Court has held that the prosecutor's use of a witness's pre-trial silence to

impeach his credibility does not deny a criminal defendant his due-process rights." *Gibbons v.

Ercole*, No. 05 Civ. 9413(PAC)(MHD), 2008 WL 8049268, at *19 (S.D.N.Y. Sept. 24, 2008)

(citing *Jenkins v. Anderson*, 447 U.S. 231, 239-41 (1980) ("The petitioner also contends that use

of prearrest silence to impeach his credibility denied him the fundamental fairness guaranteed by

the Fourteenth Amendment. We do not agree. Common law traditionally has allowed witnesses

to be impeached by their previous failure to state a fact in circumstances in which that fact

naturally would have been asserted. Each jurisdiction may formulate its own rules of evidence to

determine when prior silence is so inconsistent with present statements that impeachment by

reference to such silence is probative.") (internal and other citations omitted)), *report and

recommendation adopted*, 2010 WL 3199869 (S.D.N.Y. Aug. 12, 2010). That is, subject to the

state's evidentiary rules, a prosecutor may impeach a witness with the fact that on a prior

occasion, he or she did not mention potentially exculpatory evidence to the police. *Id.* (citing

*Jenkins*, 447 U.S. at 239).

The New York Court of Appeals has articulated its own rules pertaining to the situation

where a witness is impeached by prior silence in *People v. Dawson*, the authority relied upon by

the Appellate Division in deciding Quinney's appeal. The *Dawson* court explained,

> [T]he Trial judge should inform the jurors, upon request that the witness has no
> civic or moral obligation to volunteer exculpatory information to law enforcement
> authorities and that they may consider the witness' prior failure to come forward
> only insofar as it casts doubt upon the witness' in-court statements by reason of its
> apparent inconsistency.

*Dawson*, 50 N.Y.2d at 322-23, 428 N.Y.S.2d at 922. A trial judge does not violate the *Dawson*

holding by not giving a jury instruction if defense counsel has failed to request such an

instruction be issued. *Id.* at 324. Here, Quinney's defense counsel received the jury instruction he

requested on this point, in accordance with *Dawson*.

Even if there had been a violation of the *People v. Dawson* principle, "it would implicate

no constitutional right, as *Dawson* is merely a state-law rule." *Gibbons v. Ercole*, 2008 WL

8049268, at *19 (citing *Jenkins,* 447 U.S. at 240-41). It is well-established that habeas corpus

relief does not lie for mere errors of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502

U.S. 62, 75 (1991).

Other habeas courts have disposed of similar contentions on the ground that "[s]ubject to

certain limitations, any witness is subject to probing cross-examination that is designed to test the

witness's credibility." *Thomas v. Scully*, 854 F. Supp. 944, 959-960 (E.D.N.Y. 1994) (citing FED.

R. EVID. 607 ("The credibility of a witness may be attacked by any party, including the party

calling the witness.")). "Although an alibi witness has no duty to report exculpatory information

to the police, the witness's failure to disclose such information until the time of the trial 'is a

factor a jury should consider in assessing the weight to be given to the testimony of [the alibi]

witness.'" *Id.* (quoting *Brown v. Henderson*, 81 Civ. 6578 (CSH), 1985 WL 313, at *8 (S.D.N.Y.

Feb. 28, 1985).

### 2.      Improper cross-examination of a witness regarding his youthful offender adjudication

Quinney also asserts that the prosecutor improperly questioned defense witness Collins

about the facts underlying an offense in which he was adjudicated a youthful offender.  Pet'r

Mem. at 9-12 (Docket No. 12). The Court agrees with Quinney and the Appellate Division,

which held that as a matter of state law, the prosecutor erred in referring to the youthful offender

adjudication of a witness.

> Under New York law . . . use of a youthful offender adjudication for the purpose
> of impeachment is prohibited since the adjudication is not deemed a conviction.
> The cross-examiner may, however, bring out the facts underlying the adjudication
> so long as he does not elicit the adjudication itself. Thus in New York a youthful
> offender's credibility as a witness may be weighed in the light of any conduct on
> his part leading to the youthful offender adjudication which might cast doubt on
> his veracity. But the records and existence of the youthful offender adjudication
> itself must be kept secret in order to avoid the stigma normally attending a
> conviction for a crime.

*United States v. Canniff*, 521 F.2d 565, 569 (2d Cir. 1975) (internal citations omitted); *accord*,

*e.g.*, *Wallace v. Gonzales*, 463 F.3d 135, 139 n. 4 (2d Cir. 2006) (citations omitted).

Although Petitioner may have demonstrated an error of state law, it does not rise to the

level of a constitutional violation as it did not "so infect[ ] the trial with unfairness as to make the

resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. Given the strength of the

evidence against Quinney, there is no reasonable probability that the result of the trial would

have been different if the jury had learned only of the prior incident and not the resulting youthful offender adjudication, and thus Quinney cannot demonstrate that he was substantially prejudiced as a result of the challenged line of questioning. *See* Hughes v. Phillips, 457 F.Supp.2d 343, 367 (S.D.N.Y.2006) ("In light of the overwhelming evidence of petitioner's guilt, [and] the collateral nature of the [disputed] evidence . . . even if it were error to admit such testimony . . . , the error was not of such magnitude as to have denied him a fundamentally fair trial.")

### 3.      Disclosure to the jury that Petitioner was incarcerated

Quinney argues that the prosecutor's "perpetual disclosure of [his] incarceration status" was done with the intent to provoke a mistrial, prejudice the jury against him, and endeavor to have the jury convict based not on the proof but on the fact that Petitioner was in custody. Respondent argues the prosecutor properly elicited testimony from Collins regarding Petitioner's pre-trial incarceration in order to lay a foundation for impeachment of Collins with regard to his failure to come forward with exonerative evidence. *See People v Dawson*, 50 N.Y.2d at 317-18.

The Appellate Division held that the prosecutor did not engage in misconduct by referring to Quinney's custodial status while cross-examining his brother under the principle set forth in *People v. Dawson* that a close relative's knowledge that the defendant is incarcerated pending trial may be reasonably found to be inconsistent with the witness's failure to come forward with exculpatory evidence which might result in the accused's being freed. *People v. Quinney*, 305 A.D.2d at 1045 (citation and quotation omitted).

### 4.      Failure to disclose Grand Jury testimony of a witness

Quinney argues that the prosecutor violated a state rule requiring disclosure of all statements (regardless of whether they are exculpatory) of all witnesses. As Respondent points

out, the witness in question, Officer Smith, did not testify at the Grand Jury and thus there was no

statement that could have been withheld.

### 5.   Improper reference to a document

Quinney states that during the cross-examination of Payne, the prosecutor asked the

witness about a "piece of evidence" and "intimat[ed]" that the witness and Quinney "had

discussed such" prior to the witness' testimony. Attachment to Petition, "Ground Two Facts A-

E", ¶A (Docket No. 1). Quinney cites to pages 372-74 of the trial transcript as containing the

offensive line of questioning and describes the "piece of evidence" as a handwritten statement by

an officer regarding the complainant's description of the perpetrator. *Id.* On direct appeal, the

Appellate Division summarily rejected this contention as "lacking in merit." *People v. Quinney*,

305 A.D.2d at 1046.

Quinney's allegations are rather unclear, so the Court has quoted the relevant portion of

the transcript below:

> Q:    All right. And you're telling this jury right now that outside of him coming
>       to your door that that was so memorable to you that you can clearly tell
>       this jury, without a shadow of a doubt, that he was wearing a white tank
>       top?
>       [Defense Counsel]:    Objection, Judge. That's not even the standard of
>                            proof in a criminal case.
>       The Court:           I'm not gonna–overruled at this time. Your question
>                            is just as to his recollection?
>       [The Prosecutor]:    Yeah.
>       The Witness:   That he had on a white tank top? Yes.
> By [the Prosecutor]:
> Q:    Now, and that's because what was–what the perpetrator of this crime was
>       wearing is written right in this document, Defense Exhibit–
> A:    I never saw that document. I just told you that a minute ago. I never saw
>       that document.
>       [Defense Counsel]:    Judge, I have to interject here. I don't know if you
>                            want to do it at the bench or not.
>       The Court:           Come on up if you want something at the bench.

| [Defense Counsel]: | Yeah. |
| (Bench conference held.)[1] | |
| The Court: | Apparently your claim is what you're stating, that you didn't receive that document until jury selection? |
| [Defense Counsel]: | That's correct, your Honor. |
| The Court: | Go on. |
| [Defense Counsel]: | As part of the *Rosario* material. |
| The Court: | Move on. |

By [the Prosecutor]:

Q:    The information about what the perpetrator was wearing, that being an oh [sic] five Fubu jersey, that's been in the record for months now, you're aware of that, aren't you?

A:    No.

Q:    You recall what Mr. Quinney was wearing in the way of pants that day?

A:    Some blue shorts, jean shorts.

T.372-73. The passage quoted above reveals that after a bench conference, the trial court allowed defense counsel to inform the jury that the document had just been received by the defense during *voir dire*. The prosecutor did not mention the Defense Exhibit referenced in the above-quoted passage during the remainder of his cross-examination of Payne.

According to Quinney, however, the prosecutor continued to make improper inferences. Apparently, he is referring to the statement that the "information about what the perpetrator was wearing . . . [has] been in the record for months . . . ." T.373. Quinney cannot credibly dispute that information about what the perpetrator was wearing was contained in other documents within the record.

Later, during a colloquy out of the presence of the jury, defense counsel brought up the incident again:

| [Defense Counsel]: | No, Judge, there was another issue with that one, I think it was Exhibit F maybe, the handwritten material that–that |

---

[1]    The bench conference was held off-the-record and the contents of it are therefore unavailable.

|  |  |
|---|---|
|  | [the Prosecutor] questioned the witness about as to whether or not my client and the witness Mr. Payne discussed it, and then it came out that we didn't have that– |
| The Court: | So ignore it. |
| [Defense Counsel]: | – piece of paper. |
| The Court: | I told the jury on the record. |
| [Defense Counsel]: | I remember that. My client wanted a stronger admonition to the jury than that. |
| The Court: | Well, stronger emphasizes it. I wouldn't do it. I already told them to ignore it. I–I– when you came up here and explained that to me, I made a statement, the jury heard it. Let's get on. |

T.418. Although this Court cannot be certain, it appears that defense counsel agreed with the trial court that the curative measure was sufficient; it was Quinney who wanted an additional instruction to the jury.

I agree with Quinney that, contrary to the trial court's recollection, the transcript does not indicate that the trial court clearly instructed the jury "to just ignore it."  The transcript reveals that the trial court did permit defense counsel to correct the inference by the prosecutor that the particular document (Defense Exhibit F) had been received by the defense prior to trial. However, during the subsequent colloquy, defense counsel did not dispute the trial court's recollection about what occurred, which suggests that there perhaps was an omission in the transcript with regard to the trial judge's instruction.

There is a well-established presumption that jurors follow their instructions. *Zafiro v. United States,* 506 U.S. 534, 540-41 (1993) (emphasizing that prejudice "can be cured with proper instructions and juries are presumed to follow their instructions") (internal quotation marks omitted)). "Absent evidence to the contrary," the reviewing court "must presume that juries understand and abide by a [trial] court's limiting instructions."  *United States v. Downing,* 297 F.3d 52, 59 (2d Cir. 2002). Here, the jury was informed that the particular document had not

been received by the defense before trial. The Court must presume that the jury accepted that

representation. In any event, Quinney's pleadings do not establish that the prosecutor's conduct

in regards to the document was "so inflammatory or egregious as to require a finding of

substantial prejudice," *Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) (citations

omitted).

### C.    Claim Three: Impermissible bolstering

Quinney contends that the testimony of the assistant district attorney who had presented

the case to the Grand Jury constituted impermissible bolstering. The Appellate Division

concluded that the defense had "opened the door" to such testimony in attempting to establish

that the testimony of certain prosecution witnesses was the product of a recent fabrication.  In

particular, defense counsel had cross-examined those two occupants of the vehicle and attempted

to create the inference that their identifications were recent fabrications. Under state law, defense

counsel opened the door for the prosecution to present rebuttal testimony explaining why the

information had not been not disclosed earlier.

As Respondent argues, Quinney's claim does not implicate a question of constitutional

magnitude. The rule against "bolstering" identifications is a creature of New York state

evidentiary law, derived from *People v. Trowbridge*, 305 N.Y. 471, 113 N.E.2d 841

(N.Y.Ct.App.1953), which holds that it is error to permit an identification made by one witness

to be corroborated by the testimony of another witness who merely testifies that the identification

did occur. Federal courts have held that a claim of a bolstering violation has "no place as an issue

in criminal jurisprudence based on the United States Constitution." *Snow v. Reid,* 619 F. Supp.

579, 582 (S.D.N.Y. 1985) (dismissing habeas petitioner's claim of improper bolstering); *see also*

*Lebron v. Sanders,* No. 02 Civ. 6327(RPP), 2008 WL 793590, at *20 (S.D.N.Y. Mar. 25, 2008)

(collecting cases).

### D.   Claim Four: Violation of *Brady v. Maryland*, 373 U.S. 83 (1963)

Quinney contends that the prosecution violated his due process obligations under *Brady*

by failing to disclose the fact that two of the complainants, Jerome Winfield and Jeff Moore,

were incapable of identifying Quinney as the perpetrator. Quinney raised this in his *pro se*

supplemental appellate brief, where the Appellate Division presumably included it in the catch-

all holding dismissing Quinney's "remaining" claims as unpreserved and without merit. Next,

Quinney raised it in a *pro se* C.P.L. § 440.10 motion to vacate the judgment, where the trial court

dismissed it pursuant to a procedural bar (C.P.L. § 440.10(2)(a)) because it had been raised on

direct appeal. Respondent points out that Quinney did not seek leave to appeal the denial of

C.P.L. § 440.10 relief by the trial court and, therefore, the *Brady* claim is unexhausted but must

be deemed exhausted and procedurally defaulted. Quinney argues in his Traverse that because he

believed that the Appellate Division had considered the *Brady* claim on the merits, he did not

need to appeal the denial of the C.P.L. § 440.10 motion.

"[I]n habeas corpus cases, potentially complex and difficult issues about the various

obstacles to reaching the merits should not be allowed to obscure the fact that the underlying

claims are totally without merit." *Boddie v. New York State Div. of Parole,* 288 F. Supp.2d 431,

439 (S.D.N.Y. 2003) (quotation omitted); *see also Lambrix v. Singletary,* 520 U.S. 518, 523

(1997) (stating that bypassing procedural questions to reach the merits of a habeas petition is

justified in rare situations, "for example, if the [underlying issues] are easily resolvable against

the habeas petitioner, whereas the procedural bar issue involved complicated issues of state

law")).

At trial, the driver (Darren Abrams), as well as the passengers (Jerome Winfield and Jeff

Moore), identified Quinney as the shooter. Quinney contends that the prosecution failed to

disclose, prior to trial, that Winfield and Moore were unable to identify him, and that this

constituted *Brady* and possibly *Rosario* material, as well as newly discovered evidence. Quinney

also argued that it demonstrates the prosecutor knowingly suborned perjury from Winfield and

Moore.

Assistant District Attorney James Bargnesi ("A.D.A. Bargnesi"), who presented the case

to the grand jury, testified at trial to rebut the defense argument that Winfield and Moore were

incapable of identifying Quinney when they testified before the grand jury. A.D.A. Bargnesi

testified that in order to avoid any claim of a suggestive identification procedure, he did not ask

Winfield or Moore to identify Quinney from a single photograph when they testified at the grand

jury. Quinney contended that it was not until A.D.A. Bargnesi's testimony that he learned that

Moore and Winfield did not identify him during the pre-trial proceedings.

As the C.P.L. § 440.10 court found, contrary to Quinney's contention, the prosecution did

not conduct an identification procedure involving Winfield and Moore prior to trial. Thus, there

was no such "non-identification" to be disclosed. Quinney has failed to demonstrate two essential

of a *Brady* claims–that exculpatory evidence was withheld from the defense. *See Strickler v.*

*Greene,* 527 U.S. 263, 281-82 (1995) ("There are three components of a true *Brady* violation: (1)

The evidence at issue must be favorable to the accused, either because it is exculpatory, or

because it is impeaching; (2) that evidence must have been suppressed by the State, either

willfully or inadvertently; and (3) prejudice must have ensued."). In any event, the cross-

examination of Moore indicates that defense counsel was aware Moore had told an investigator for the insurance company that he was uncertain whether he could identify the shooter.

### E.    Claim Five: Unduly suggestive identification procedure

Petitioner claims his that his due process rights were violated by an unduly suggestive pre-trial identification procedure and that a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967) should have been held. I agree with Respondent that this claim lacks merit.

The purpose of a *Wade* hearing is to test identification testimony for taint arising from official suggestion during police-arranged confrontations between a defendant and an eyewitness. *People v. Dixon*, 85 N.Y.2d 218, 222 (N.Y. 1995) (citations omitted).  On direct appeal, the Appellate Division found that because he had withdrawn his request for a *Wade* hearing, after conceding that there was no police-arranged identification procedure, he consequently waived his contention that he was entitled to a such a hearing.

Furthermore, the Appellate Division determined, the identification of Quinney on a public street by one of the victims was not the result of a police-arranged identification procedure, and thus a *Wade* hearing would not have been warranted. *See People v. Whisby*, 48 N.Y.2d 834, 835-36 (N.Y. 1979) ("[The defendant] was identified by the complaining witness on a public street in White Plains and . . .there were no police identification procedures necessary and none, in fact, took place.") (quotation marks and quotation omitted); *cf. Dixon*, 85 N.Y.2d at 222 ("Here, the canvassing of the crime area in the police car was an identification procedure undertaken at the deliberate direction of the State. It is undisputed that the victim was escorted to the crime scene by police, indicating that this was a confrontation arranged for the distinct purpose of identifying the perpetrators of the mugging. This planned identification encounter is distinguishable from

those non- police-sponsored identifications resulting from mere happenstance, such as where a

witness is present in police headquarters for some purpose other than to effectuate an

identification, and by chance views and identifies a suspect who is being processed in another

room.") (internal quotation marks and citation omitted).

As an additional reason why a *Wade* hearing would not have been warranted, the

Appellate Division found, the victim's spontaneous act of pointing Quinney out to the police as

the shooter was merely a confirmatory identification. "The trial court may dispense with a full

*Wade* hearing, however, where the prosecution alleges that the identifying witness and the

defendant are known to each other, 'because that witness will naturally be "impervious to police

suggestion," and the risk of misidentification is therefore slight.'" *Williams v. Phillips*, 433 F.

Supp.2d 303, 316 (W.D.N.Y. 2006) (Bianchini, M.J.) (quoting *Dixon,* 85 N.Y.2d at 224)

(quoting *People v. Rodriguez*, 79 N.Y.2d 445, 455 (N.Y. 1992)).

At most, then, Quinney's argument can be interpreted as stating that the trial court

committed an error of *state* law by not holding a *Rodriguez* hearing, for the Supreme Court

clearly has held that the state is not required by the due process clause of the Fourteenth

Amendment to conduct a hearing out of the jury's presence whenever a defendant contends that a

witness' identification of him was arrived at improperly. *Watkins v. Sowders,* 449 U.S. 341,

345-50 (1981); *see also Brown v. Harris,* 666 F.2d 782, 785 (2d Cir.1981), *cert. denied,* 456 U.S.

948  (1982). In *Watkins v. Sowders,* the Supreme Court declined to hold that the Due Process

Clause of the Fourteenth Amendment in all cases requires a trial judge to hold a "fair hearing,"

*Jackson v. Denno,* 378 U.S. 368, 377  (1964), to decide the admissibility of eyewitness

identification. The Supreme Court noted that while "[a] judicial determination outside the

presence of the jury of the admissibility of identification evidence may often be advisable" and

may "[i]n some circumstances . . . be constitutionally necessary[,]" it did "not follow that the

Constitution requires a per se rule compelling such a procedure in every case." 449 U.S. at 349.

Thus, the right to a so-called "*Rodriguez* hearing" prior to trial to determine an eyewitness'

familiarity with the defendant is purely a creature of New York state decisional law and statutory

law. Furthermore, courts in this Circuit have observed that New York's standard for determining

when a pre-trial hearing on the suggestiveness of an identification procedure should be held "may

be more rigorous than the federal doctrine as applied in this Circuit." *Alvarez v. Fischer,* 170 F.

Supp.2d 379, 385-86 (S.D.N.Y. 2001) (citing *Garcia v. Kuhlmann*, 897 F. Supp. 728, 731

(S.D.N.Y. 1995)).

Inasmuch as the decision as to whether to grant a *Rodriguez* hearing is solely a matter of

state law, the general rule is that it is not reviewable in a habeas petition. *Estelle v. McGuire*, 502

U.S. at 67  (1991) ("[I]t is not the province of a federal habeas court to reexamine state court

determinations on state law questions. In conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

(citations omitted). Federal constitutional law does not give defendants a per se right to pre-trial

or mid-trial hearings on the admissibility of identification testimony. *Watkins v. Sowders,* 449

U.S. at 349. Because the Supreme Court has explicitly declared that there is no *per se*

constitutional rule compelling an evidentiary hearing with regard to witness identification of an

accused, nor has it clearly articulated the circumstances under which a pre-trial hearing may be

constitutionally necessary, the state court's failure to hold a hearing on Abrams' identification of

Petitioner could not have been contrary to nor constituted an unreasonable application of clearly

established federal law in this matter. *Accord Alvarez v. Fischer,* 170 F. Supp.2d at 384.

**F.      Claim Six: Failure to hold a *Dunaway* hearing**[2]

Respondent argues Quinney's claim that he was entitled to a *Dunaway* hearing to explore whether there was probable cause for his arrest is unexhausted because it was not raised as a stand-alone claim in the state courts. A more fundamental reason why this claim must be dismissed is that it is simply not cognizable in a post-conviction federal habeas proceeding.

A federal court's authority to review a Fourth Amendment claim in a § 2254 application is severely limited. In *Stone v. Powell,* 428 U.S. 465, 482 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *See Palacios v. Burge,* 589 F.3d 556, 561 (2d Cir.2009) (noting that *Stone v. Powell* "bars us from considering Fourth Amendment challenges raised in a petitioner's petition for habeas relief"); *Graham v. Costello,* 299 F.3d 129, 134 (2d Cir.2002) (explaining that *Stone v. Powell* "bar to federal habeas review of Fourth Amendment claims is permanent and incurable" unless the state fails to provide "a full and fair opportunity to litigate the claim"). To demonstrate the requisite lack of opportunity, petitioner must show that the state either (a) "has provided no corrective procedures at all to redress the alleged Fourth Amendment violations", or (b) "has provided a corrective mechanism, but [he] was precluded from using that mechanism

---

[2]      The purpose of a pretrial hearing pursuant to *Dunaway v. New York*, 442 U.S. 200 (1979), is to determine whether probable cause existed for a criminal defendant's arrest. The Supreme Court recognized in *Dunaway* that statements given by a suspect who is arrested without probable cause must be suppressed pursuant to the Fourth Amendment's "exclusionary rule." *Id.* at 216-18.

because of an unconscionable breakdown in the underlying process." *Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir.1992).

Neither situation exists here. As an initial matter, petitioner fails to satisfy the first prong because "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. CRIM. PROC. LAW § 710.10 *et seq.* . . . as being facially adequate." *Capellan,* 975 F.2d at 70 n. 1. It matters not whether the defendant has actually taken advantage of the corrective process in state court; all that is required is there be an opportunity to do–and there clearly was in this case. Finally, Quinney has not demonstrate that he was precluded from using the corrective mechanism because of an "unconscionable breakdown" in the system. Even if a hearing had been held, there is no reasonable possibility that the arrest would have been suppressed–the victim's identification of Quinney as the person who pointed a gun at him and shot in his direction provided the police probable cause to believe that defendant had committed a crime. *See People v. Lindsey*, 3 Misc.2d 1104(A), 787 N.Y.S.2d 680 (Table), 2004 WL 1087381, at *3 (N.Y. Supp. Feb. 6, 2004) ("There can be no doubt that probable cause to arrest defendant arose from the victim's identification of defendant's photograph as that of the person who shot him.") (citing *People v. Mitchell,* 170 A.D.2d 542, 566 N.Y.S.2d 321 (App. Div. 2d Dept.1991) ("[T]he record establishes that the defendant was arrested after witnesses to the instant homicide implicated him to investigating detectives. Moreover, at least one witness identified the defendant's photograph from a photographic array. Pursuant to these eyewitness identifications, the police clearly had probable cause to effect the defendant's arrest[.]") (citations omitted)).

**G.      Ground Seven: Ineffective assistance of trial and appellate counsel**

Petitioner claims that he was denied effective assistance of trial and appellate counsel. Specifically, he contends that trial counsel was ineffective for not challenging a jury charge and not requesting a specific pre-trial hearing. Quinney contends appellate counsel was ineffective for failing to properly settle the record on appeal, which, he contends, contained factual errors.

The standard of review for claims of ineffective assistance of counsel has two prongs as set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). The *Strickland* standard also applies to claims attacking appellate counsel's performance. Petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness, and then, that there is a reasonable probability that, but for counsel's error, the outcome would have been different. 466 U.S. at 688-694. A reviewing court need not address the performance and prejudice aspects in any particular order, and if it is easier to resolve the claim based upon consideration of the prejudice prong first, the court is free to do so. *Id.* at 697.

On direct appeal, the Appellate Division held that "v]iewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation," Quinney received meaningful representation from his trial counsel under *People v. Baldi*, 54 N.Y.2d 137, 147 (N.Y. 1981). The Appellate Division summarily denied his *coram nobis* application concerning appellate counsel's performance. Both of these holdings constitute adjudications on the merits for purposes of AEDPA. Petitioner thus must also demonstrate that the state courts unreasonably applied *Strickland* in rejecting his ineffective assistance claims.

### 1.    Ineffective assistance of appellate counsel

After reviewing Quinney's petition and other pleadings, the only alleged factual error that he specifies occurred during the cross-examination of defense witness Payne wherein he was

questioned about his arrest at a nightclub in an unrelated incident; Quinney states  that the

transcript does not contain the prosecutor's questions about the individuals arrested with Payne

or the nature of the underlying charges. He concedes that the record does reflect that Payne was

acquitted of criminal involvement in that incident. As Respondent points out, Quinney's

contention that the record inaccurately reflects the testimony at trial relies on his own memory of

the proceedings. No sworn affidavit was submitted on behalf of Petitioner's trial counsel alleging

a defect in the transcript. Furthermore, the Court does not see how the allegedly omitted

evidence–to the extent it can be discerned, since Quinney does not give specifics–would have

helped the defense. This claim is factually and legally baseless and is dismissed.

### 2.      Ineffective assistance of trial counsel

Quinney contends in his habeas petition that trial counsel erroneously failed to request a

*Dunaway* hearing and failed to request a jury instruction regarding defense witness Antwan

Collins' invocation of his Fifth Amendment privilege.

With regard to *Dunaway* hearing, as discussed above in Section IV.F, there is no

reasonable probability that such a hearing would have been successful. Thus, Quinney cannot

demonstrate that he was prejudiced by trial counsel's failure to pursue one.

 With regard to the failure to request a jury instruction, that, too, did not prejudice

Quinney. Collins testified for the defense in an attempt to establish that Collins, rather than

Quinney, was the shooter. Collins stated that he saw two men get out of a Ford Expedition

S.U.V. and chase after Quinney and shoot at him on B Street. Collins testified that he had

retrieved his gun from a hiding place but refused to state what he then did with the gun, invoking

his Fifth Amendment privilege against self-incrimination. Overall, Collins' testimony was

favorable to the defense, inasmuch as it painted the vehicles' passengers as the aggressors and suggested that Collins himself may have been the shooter. The trial court issued a limiting instruction stating that the jury could consider Collins' assertion of his Fifth Amendment privilege in evaluating his credibility.

Quinney subsequently argued on appeal that because Collins invoked his Fifth Amendment privilege with regard to matters closely related to the commission of the crime rather than collateral matters, the trial court should have partially stricken Collins' direct testimony rather than instructing the jury as it did.

Although the invocation of the privilege against self-incrimination may not be considered as to the facts surrounding the crime for which a defendant is charged, it can be considered when assessing the witness's credibility. *E.g.*, *People v. Siegel*, 87 N.Y.2d 536, 543-44; *People v. Faeth*, 298 A.D.2d 987, 988 (App. Div. 4th Dept. 2002) (citations omitted). In *Siegel*, the New York Court of Appeals approved of the trial court's decision advise the jury that it could consider a defense witness's of the privilege on his credibility, rather than striking his testimony, since that remedy was not only consistent with a proper concern for the defendant's Sixth Amendment right to call witnesses on his own behalf. 87 N.Y.2d at 544-45 ("Less severe alternatives are particularly worthy of consideration when a defense witness has invoked the privilege, in view of the defendant's Sixth Amendment right to present testimony[.]") (citation omitted). The *Siegel* court also found that issuing a limiting instruction, rather than striking the testimony, was also fitted to the actual significance of the defense witness's action. There, as here, the defense witness asserted the privilege on cross-examination by the prosecutor, and his direct testimony was never subjected to the truth-testing process of cross-examination, a factor which the jury was

properly permitted to take into account. *Id.* at 545. Finally, The trial court's instruction was also consistent with other cases holding that a witness's obstruction of cross-examination is a factor for the jury to weigh on credibility. *Id.* (citations omitted).

Essentially, Quinney's argument on appeal amounts to cutting off his nose to spite his face. *Siegel*, 87 N.Y.2d at 545 ("Since . . . the trial court would have been justified in striking all of [the defense witness's] direct testimony with instructions to the jury completely to disregard it, defendant is hardly in a position to complain of the less drastic remedy the court applied for the deprivation of the People's right of cross-examination, inviting the jury to consider its bearing on [the defense witness's] credibility. We note that the court properly charged the jury that his assertion of the privilege did not justify an inference on the merits of the case."). The trial court's remedy allowed the jury to still consider Collins' testimony. It thus was entirely reasonable for trial counsel to pursue the strategy of not seeking to strike all of Collins' testimony, which would have eliminated a significant part of his defense.

## V.    Conclusion

Alfonzo Quinney's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied because none of the claims raised therein have merit, and the petition is dismissed. Because Quinney has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/  *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      May 16, 2011
            Buffalo, New York